IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFF HATCHER and MICHELLE HANSFORD, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:14-cv-432-M-BN |
| CITY OF GRAND PRAIRIE and WESLEY BEMENT, | § § § | |
| Defendants. | § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference. Defendants City of Grand Prairie and Wesley Bement ("Defendants") have filed separate Federal Rule of Civil Procedure 12(b)(6) motions seeking the dismissal of all claims brought in this civil rights action. *See* Dkt. Nos. 8 & 9. Plaintiffs filed responses, *see* Dkt. Nos. 15 & 16, and Defendants filed a joint reply, *see* Dkt. No. 17.

For the reasons explained below, Defendant Wesley Bement's Rule 12(b)(6) motion to dismiss [Dkt. No. 9] should be denied, and his Request for a Federal Rule of Civil Procedure 7(a) Reply to Immunity Defense should be granted. Defendant City of Grand Prairie's Motion to Dismiss [Dkt. No. 8] should be granted in part with prejudice and granted in part without prejudice; Plaintiffs' municipal liability claims should be dismissed without prejudice, and their Texas wrongful death and survivor claims should be dismissed with prejudice.

## Background

On February 4, 2014, Plaintiffs Jeff Hatcher and Michelle Hansford ("Plaintiffs"), individually and as the heirs of the estate of Jordan Ross Hatcher ("Hatcher"), filed this civil rights action against the City of Grand Prairie, Texas ("the City" or "Grand Prairie"), and Officer Wesley Bement ("Officer Bement") of the Grand Prairie Police Department. *See* Dkt. No. 1. Plaintiffs allege that Officer Bement used excessive force against Hatcher in violation of 42 U.S.C. § 1983 and that Grand Prairie is liable for Officer Bement's use of excessive force because it failed to properly train and supervise its officers, provided excessive discretion to officers, and permitted and encouraged improper uses of force. Plaintiffs further claim violations of Texas tort law against Grand Prairie because Officer Bement was acting within the course and scope of his employment when he injured Hatcher, and Plaintiffs seek punitive damages against both defendants.

Defendants contend that Plaintiffs fail to plead facts sufficient to state a plausible claim for the use of excessive force by Officer Bement or to establish municipal liability under Section 1983, fail to overcome governmental immunity from tort suits under Texas law, and are not entitled to punitive damages. *See* Dkt. Nos. 8 & 9.

In their complaint, Plaintiffs allege that, on or about January 24, 2013, officers with the Grand Prairie Police Department were dispatched to a Target retail store to investigate an allegation of attempted theft of a video game controller. Plaintiffs allege that Hatcher, unarmed, briefly struggled with an officer and then fled the Target

property. He was discovered nearby a short time later and was surrounded by at least five Tarrant County College ("TCC") Police Officers and Officer Bement. Although Hatcher was unarmed and surrounded by six officers, Officer Bement allegedly attempted to shoot Hatcher with his taser but missed. According to Plaintiffs, Officer Bement then tried to shock Hatcher directly with the taser, and two TCC police officers simultaneously sprayed Hatcher in the face with mace or pepper spray. Plaintiffs explain:

> While Hatcher was being sprayed in the face by TCC Police Officer[s], Bement retreated and left his taser lodged under the arm of Hatcher. The TCC Officers, without ever drawing their guns, were effective with their spray. Hatcher began to walk slowly away, still holding Bement's unloaded taser, and rubbing his eyes and face. Without warning, while a TCC Officer was going in to spray Hatcher again, and while Hatcher did not pose a threat, Bement drew his gun and fired four hollow point bullets into the body of Hatcher. The person closest to Hatcher when he was shot, a TCC Police Officer, was nearly shot by Bement, did not have her gun drawn, was not being attacked, was attempting to spray Hatcher with her mace/pepper spray, and did not understand why Bement was shooting. As Hatcher rubbed his eyes, Bement shot Hatcher repeatedly until he was dead.

Dkt. 1 at 3-4.

Plaintiffs contend that this conduct constitutes excessive, unreasonable, and unnecessary force under the Fourth Amendment. They urge that Officer Bement's unconstitutional actions were the direct result of Grand Prairie's unnamed "customs, practices, and policies" and that the City is liable under Texas law for the negligent conduct of Officer Bement. *Id.* at 6-7.

Case 3:14-cv-00432-M-BN   Document 21   Filed 07/15/14   Page 4 of 17   PageID 140

**Legal Standards**

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

- 4 -

A municipality may be held liable for the deprivation of rights guaranteed by the Constitution or federal law only if the deprivation was the result of an official policy. *See Monell v. Dep't of Social Servs. of N.Y.,* 436 U.S. 658, 694 (1978). Such a policy may include "'a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir. 1995) (quoting *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984)). However, "[i]t is well-established that a city is not liable under § 1983 on the theory of respondeat superior." *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 847 (5th Cir. 2009). To establish municipal liability under 42 U.S.C. § 1983, plaintiff must prove three elements: "'(1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom.'" *Hampton Co. Nat'l Surety, LLC v. Tunica Cnty.,* 543 F.3d 221, 227 (5th Cir. 2008) (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001)). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162, 167 (5th Cir. 1997).

In certain extreme circumstances, a single act by a municipal employee may form the basis of municipal liability apart from a pattern of unconstitutional activity. *See Bd. of Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 410 (1997); *see also Bryan v. Brown Cnty., Okla.,* 219 F.3d 450, 459 (5th Cir. 2000). To rely on this exception, a

- 5 -

plaintiff must prove that the "highly predictable" consequence of a failure to train would result in the specific injury suffered and that the failure to train represented the "moving force" behind the constitutional violation. *Bryan,* 219 F.3d at 461.

## Analysis

Officer Bement contends that Plaintiffs' claims should be dismissed in their entirety. He urges that the claims of excessive force are conclusory and are not supported by factual allegations sufficient to avoid Rule 12(b)(6) dismissal. Grand Prairie argues that Plaintiffs fail to state a claim for *Monell* liability, are barred by sovereign immunity from raising a claim under Texas tort law, and cannot receive punitive damages.

### *Excessive Force*

Initially, the undersigned concludes that Plaintiffs have alleged sufficient facts to state a claim for excessive force. To prevail on a Fourth Amendment excessive force claim in the context of an arrest or investigatory stop, a plaintiff must establish: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005); *see also Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). Plaintiffs' allegations, accepted as true and viewed in the light most favorable to them, state a claim for excessive force plausible on its face. *See Katrina,* 495 F.3d at 205. Specifically, they allege the non-conclusory facts that Hatcher, who was accused of the non-violent offense of attempted theft of a video game controller, was unarmed and surrounded by six armed officers, that Hatcher

never threatened Officer Bement or any other officer, that Hatcher was incapacitated by pepper spray before he was shot, that there were a sufficient number of officers on scene to subdue Hatcher without the need to resort to deadly force, and that Hatcher was shot an additional three times after the initial gunshot. *See* Dkt. No. 1 at 3-5.

Apprehension by the use of deadly force is a Fourth Amendment seizure, *see Carnaby v. City of Houston,* 636 F.3d 183, 187 (5th Cir. 2011) (citing *Tennessee v. Garner,* 471 U.S. 1, 7 (1985)), and Hatcher's death was an injury caused by the deadly force employed, so the only issue is whether Plaintiffs state a plausible claim that the use of that deadly force was unreasonable. To gauge the objective reasonableness of the force, a court "must balance the amount of force used against the need for force." *Ramirez v. Knoulton,* 542 F.3d 124, 129 (5th Cir. 2008) (internal quotation marks and citation omitted). The "[u]se of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine,* 333 F.3d 621, 624 (5th Cir. 2003). The inquiry into reasonableness is fact-specific and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396-97 (1989).

Looking only at the pleadings and accepting Plaintiffs' factual allegations as true for purposes of the motion to dismiss, as the Court must, the undersigned concludes that Plaintiffs have pled a facially plausible claim that the use of deadly force was excessive and unreasonable under the circumstances faced by Officer Bement. Plaintiffs have alleged sufficient facts to state a plausible Fourth Amendment excessive

force claim, and the motion to dismiss on this ground should therefore be denied.

*Municipal Liability*

Grand Prairie correctly urges that Plaintiffs' complaint does not include any allegations to suggest the identity of a municipal policymaker who created a policy that was the "moving force" behind the alleged constitutional violation. Although Plaintiffs generally allege that Grand Prairie is responsible for creating "customs, practices, and policies" that led to Officer Bement's use of improper and excessive force, they do not "identify a policymaker" as required by *Monell. See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). "Such a failure is fatal in the Fifth Circuit." *LaGatta v. Harris Cnty.*, No. H-08-3189, 2009 WL 2761646, at *4 (S.D. Tex. Aug. 26, 2009) (citing *Webster*, 735 F.2d at 842).

That Plaintiffs believe that "the requirement to provide a specific named person at this stage of the case is premature," Dkt. 16 at 5, does not excuse this pleading failure. "The court agrees with the City's contention that the plaintiffs' failure to plead specific facts on this element of a § 1983 claim renders the plaintiffs' complaint defective.... [T]here is abundant case law in this circuit that a plaintiff must identify a policymaker in a § 1983 action against a municipality." *Pivonka v. Collins*, No. 3:02-cv-742-G, 2002 WL 1477455, at *4 (N.D. Tex. July 5, 2002); *see also Piotrowski*, 237 F.3d at 579 (noting that identifying a municipal policymaker who could be held responsible under § 1983 "is not an opaque requirement"); *Chalmers v. City of Dallas*, No. 3:14-cv-36-N, 2014 WL 1778946, at *3 (N.D. Tex. May 5, 2014).

Similarly, Plaintiffs fail to identify any particular policy or custom – formal or

informal – that led to the constitutional violations alleged in their complaint. They

contend that the City:

      a.      failed to properly train and supervise its police officers in the use of tasers, including training and supervision concerning when tasers should be used and how to use tasers;

      b.      failed to properly train and supervise its police officers in the use of deadly force, including training and supervision concerning when deadly force should be used;

      c.      provided its police officers with excessively broad discretion in both the use of force and the amount of force used without considering less drastic alternatives; and

      d.      permitted and encouraged use of force to intimidate, coerce, or subdue individuals without provocation.

Dkt No. 1 at 6. Defendants further allege that "[t]he City knew or should have known

that these customs, practices, and policies would result in the violation of

constitutional rights of individuals like Hatcher." *Id.*

These conclusory assertions do not allege any specific policy or custom of the

City that led to the constitutional violations at issue in this lawsuit. As United States

District Judge Sam A. Lindsay has explained,

> [r]equiring a plaintiff to identify the specific policy or custom and allege that the policy or custom adopted by the municipality or policymaking official was the "moving force" behind the constitutional violation is in no way inconsistent with notice pleading or the mandate of *Leatherman*. Such requirement actually complements Rule 8 in that it puts a defendant on notice of the grounds on which a plaintiff's claim rests. In other words, the allegations of a complaint must not be conclusory; otherwise, a defendant is not placed on notice of the grounds for the claim. Conclusory allegations cannot survive a motion to dismiss.

*Henrise v. Horvath*, 174 F. Supp. 2d 493, 502 (N.D. Tex. 2001) (citing *Guidry v. Bank*

*of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992)). A plaintiff must identify the policy, connect the policy to the governmental entity itself, and show that his injury was incurred because of the application of that specific provision. *See White v. Jackson*, No. 7:13-cv-50-O, 2014 WL 99976, at *4 (N.D. Tex. Jan. 10, 2014) (citing *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir. 1984)).

Without any factual allegations in their complaint to suggest an official policy or custom to support municipal liability, Plaintiffs have failed to state a claim for relief.

Moreover, Plaintiffs' claims for municipal liability based upon informal or *de facto* policies also fail to state a claim for relief. Plaintiffs contend that

> [t]he City had actual or constructive knowledge that its customs, practices, and policies were dangerous and certain to result in the violation of constitutional rights. For example, The City knew from multiple complaints and lawsuits that injuries and death were resulting from its officers['] misuse of force before Hatcher was gunned down. The City's failure to address and correct these customs, practices, and policies demonstrates The City's deliberate disregard for the constitutional rights and safety of individuals subject to The City's law enforcement activities.

Dkt. No. 1 at 7. Without any facts to support these allegations, they are no more than conclusory allegations that amount to nothing more than a "formulaic recitation of the elements" of a municipal liability claim. *Twombly,* 550 U.S. at 554-55. As such, the allegations are conclusory and not entitled to the assumption of truth. *See id.*

Plaintiffs' allegations are about one incident involving Officer Bement, which they allege resulted in a constitutional deprivation, from which Plaintiffs ask the Court to infer that Grand Prairie had a *de facto* policy or customary practice of allowing excessive force by its peace officers or that Grand Prairie engaged in ratification by

inaction. But pleadings pertaining to individual actions taken in this specific case do not suffice to establish a pattern necessary for municipal liability based on custom or practice. *See White*, 2014 WL 99976, at *6 (citing *Bennett,* 728 F.2d at 768 n.3). That is, they do not show that "the relevant practice is so widespread as to have the force of law." *Brown,* 520 U.S. at 404; *see also Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (to establish an informal municipal custom, a plaintiff must demonstrate persistent, repeated, or constant violations).

In short, Plaintiffs have failed to adequately allege that Grand Prairie's actions, through its duly enacted or informal policies or customs promulgated by its policymakers, were the motivating force behind any alleged constitutional deprivation. It is not enough to say that because an officer did something wrong he must have acted pursuant to some undisclosed custom, practice, or policy that permits such wrongdoing.

To the extent that Plaintiffs seek to hold Grand Prairie liable for the officer's conduct based on a theory of deliberate indifference, Plaintiffs have also failed to state claim for relief. To establish liability under a failure to train theory, a plaintiff must show: (1) inadequate training procedures; (2) inadequate training caused the constitutional violation; and (3) the deliberate indifference of municipal policymakers. *See Pineda,* 291 F.3d at 331-32. "[T]he focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. The inadequacy of the training must be closely related to the injury." *Id.* at 332 (citations and internal quotation marks omitted).

Here, Plaintiffs do not allege facts that would allow the Court to infer that the

"highly predictable" consequence of a failure to train would result in the specific injury suffered and that the failure to train represented the "moving force" behind the alleged constitutional violation. *Bryan,* 219 F.3d at 461.

### Texas Tort Claims Act

Grand Prairie also seeks dismissal of any tort claims brought under Texas law, since a municipality enjoys immunity for intentional torts under state statute. *See* Dkt. No. 8 at 17-20. Plaintiffs contend that Grand Prairie is liable for wrongful death and has waived sovereign immunity pursuant to Texas Civil Practices and Remedies Code § 101.021 for Officer Bement's conduct "when he negligently injured Hatcher through the use of tangible personal property." Dkt. 1 at 7-8.

This claim should be dismissed. Municipal governments are immune from tort suits except to the extent that immunity has been waived by the Texas Tort Claims Act ("TTCA"). *See Muhammad v. Newell*, No. 3:08-cv-1426-BD, 2009 WL 2482142, at *3 (N.D. Tex. Aug. 12, 2009) (citing *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 122 (Tex. App. – Houston [1st Dist.] 1995, no writ)). Although the TTCA waives immunity in certain limited circumstances, *see* TEX. CIV. PRAC. & REM. CODE § 101.021, the waiver does not extend to claims "arising out of assault, battery, false imprisonment, or any other intentional tort," *id.* at § 101.057(2).

Plaintiffs contend that they should be permitted to prosecute a wrongful death action under Texas law because they have pled negligent, rather than intentional, conduct. *See* Dkt. No. 1 at 8; Dkt. No. 16 at 6. But federal courts, interpreting Texas law, have found that claims for wrongful death – including those resulting from an

officer's intentional fatal shooting – are intentional torts for which governmental units have not waived immunity under the TTCA. *See Boyd v. City of River Oaks, Tex.*, Nos. 4:13-cv-443-A & 4:13-cv-511-A, 2014 WL 201704, at *6 (N.D. Tex. Jan. 16, 2014) (considering wrongful death and survivor claims brought against city for failure to address suicidal inmate); *see also Guerrero v. City of El Paso, Tex.*, No. EP-11-cv-101-KC, 2011 WL 3880946, at *4 (W.D. Tex. Sept. 1, 2011) (considering wrongful death claim brought against officers for fatally shooting fleeing suspect); *Hobart v. City of Stafford,* 784 F. Supp. 2d 732, 761-62 (S.D. Tex. 2011) (finding wrongful death claim premised on intentional fatal police shooting was intentional tort and therefore one for which TTCA did not waive immunity); *Holland v. City of Houston,* 41 F. Supp. 2d 678, 713 (S.D. Tex. 1999) ("Where the essence of a claim under the TTCA arises from an intentional tort, allegations of negligence are insufficient to avoid the § 101.057 exception to liability."). "Even where a plaintiff labels his claim as 'negligence,' that claim will still be barred if the label is merely a fiction or arises out of an intentional tort." *Cox v. City of Ft. Worth, Tex.,* 762 F. Supp. 2d 926, 935 (N.D. Tex. 2010).

Under the circumstances described in the complaint, Officer Bement's use of force was deliberate and intentional, not merely negligent. There is no allegation that Officer Bement did not intend to shoot Hatcher. There is also no indication – and the Plaintiffs do not contend – that the gun misfired or discharged inadvertently. Plaintiffs cannot now plead that Officer Bement was simply negligent to support state law claims under the TTCA. *See Holland*, 41 F. Supp. 2d at 713-14. The Plaintiffs do not allege that Hatcher's death arose from an independent act of negligence on the part of Grand

Prairie or another employee of Grand Prairie for which immunity is waived. *See Downey v. Denton County*, 119 F.3d 381, 387-88 (5th Cir. 1997).

Although ostensibly couched as negligence claims, Plaintiffs' claims against Grand Prairie are in essence intentional tort claims and are barred under the doctrine of sovereign immunity. Accordingly, the Court lacks jurisdiction to hear Plaintiffs' claim for wrongful death against Grand Prairie.

### Punitive Damages

Grand Prairie contends that Plaintiffs' allegations of "malice or gross neglect," *see* Dkt. No. 1 at 8, cannot support a claim for punitive damages under Texas law. *See* Dkt. No. 8 at 21 (citing TEX. CIV. PRAC. & REM. CODE § 101.024). Because none of Plaintiffs' Texas tort claims remain, the Court need not address this argument.

### Request For Rule 7(a) Reply

Officer Bement alternatively requests that Plaintiffs provide a Rule 7(a) reply to his defense of qualified immunity. Plaintiffs do not appear to oppose the relief sought under Federal Rule of Civil Procedure 7(a). *See* Dkt. No. 15 at 5 ("in the event the Court concludes that Plaintiffs' Complaint requires more detail, Plaintiffs requests to leave to either amend the complaint or file a reply under Rule 7(a)"). The undersigned concurs that this immunity defense should be resolved as early as possible. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (noting that "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation").

When a public official pleads the defense of qualified immunity, a district court

- 14 -

has discretion under Rule 7(a) to require the plaintiff to file a reply specifically tailored to that defense. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). A Rule 7(a) reply is required when a plaintiff pleads only sparse details of claimed wrongdoing by officials. *See Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999) (citing *Schultea*, 47 F.3d at 1430, 1432, 1434). The court should exercise this narrow discretion when greater detail might assist in vindicating an immunity defense. *See Schultea*, 47 F.3d at 1434. The heightened pleading standard requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury. *See Reyes*, 168 F.3d at 161.

The undersigned concludes that more detail about the totality of circumstances faced by Officer Bement, his own conduct, and Hatcher's conduct when confronted by the officers will assist in resolving the qualified immunity defense. Because the undersigned has recommended that Plaintiffs be permitted to file an amended complaint to address pleading deficiencies, they may choose to plead their allegations of excessive force with more particularity in an amended complaint rather than a Rule 7(a) reply. *See Cole v. Hunter*, No. 3:13-cv-2719-O, 2014 WL 266501, at *4 (N.D. Tex. Jan. 24, 2014) (explaining that an amended complaint "is a proper response" to a motion seeking a Rule 7(a) reply).

Accordingly, should any claims survive following District Judge Barbara M.G. Lynn's consideration of these Findings, Conclusions, and Recommendation, Plaintiffs should be required to file a Rule 7(a) reply or an amended complaint that complies with the heightened pleading required when the defense of qualified immunity is raised. *See*

*Fisher v. Dallas Cnty.*, No. 3:12-cv-3604-D, 2014 WL 1516178, at *3 (N.D. Tex. Apr. 18, 2014). The undersigned will then address the limited issue of Officer Bement's qualified immunity defense by way of an appropriate order.

## Recommendation

Defendant Wesley Bement's Rule 12(b)(6) motion to dismiss [Dkt. No. 9] should be denied, and his Request for a Rule 7(a) Reply to Immunity Defense should be granted. Defendant City of Grand Prairie's Motion to Dismiss [Dkt. No. 8] should be granted in part with prejudice and granted in part without prejudice: Plaintiffs' municipal liability claims should be dismissed without prejudice, and their Texas wrongful death and survivor claims should be dismissed with prejudice. The Court should grant Plaintiffs 21 days from the date of any order adopting these Findings, Conclusions, and Recommendation in which to file an amended complaint addressing the deficiencies in their municipal liability claims identified in the Findings, Conclusions, and Recommendation of the United States Magistrate Judge and to provide in the amended complaint or a separate Rule 7(a) reply the particular facts that Plaintiff contend demonstrate that Officer Bement is not entitled to qualified immunity. The Court should order that, if Plaintiffs fail to do so, all claims against all defendants will be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 15, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE