IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JEFF HATCHER, INDIVIDUALLY,** | § | |
| **and MICHELLE HANSFORD,** | § | |
| **INDIVIDUALLY, and as the lawful heirs** | § | |
| **of the ESTATE OF JORDAN ROSS** | § | |
| **HATCHER,** | § | |
| Deceased; | § | **CIVIL ACTION NO. 3:14-CV-00432-M** |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| **CITY OF GRAND PRAIRIE** | § | |
| **and WESLEY BEMENT** | § | |
| Defendants. | § | |

## PLAINTIFF'S FED. R. CIV. P. 7(a) REPLY
## TO THE DEFENSE OF QUALIFIED IMMUNITY

Plaintiffs Jeff Hatcher, Michelle Hansford, individually, and as lawful heirs of the Estate of Jordan Ross Hatcher file this Reply, pursuant to Fed. R. Civ. P. 7(a), to Defendant Wesley Bement's defense of qualified immunity, and respectfully show the Court:

### SUMMARY

1.   This Court has determined that Plaintiffs have sufficiently pleaded facts to demonstrate that Jordan Hatcher's ("Hatcher") right to be free of excessive force was violated. In his Answer, however, Officer Wesley Bement ("Bement") sets forth additional facts in an attempt to assert a qualified-immunity defense. To be entitled to qualified immunity, the officer must establish that he or she acted reasonably <u>at the moment</u> of the threat that resulted in the shooting. Any actions of an officer or suspect leading up to the shooting <u>are not relevant</u>.[1] The large bulk of Bement's facts are not relevant because they do not address the threat of danger at the moment Bement shot Hatcher.

---

[1] *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. Tex. 2001); *See also Harris v. Serpas*, 745 F.3d 767, 772, (5th Cir. 2014).

2.  Further, based on the totality of circumstances at the time Bement shot Hatcher, including the fact that: six armed officers surrounded Hatcher at the time of the shooting; not one of the other five officers even had his or her weapon drawn when Bement shot Hatcher; one of the officers closest to Hatcher was about to approach Hatcher to pepper spray him when Bement shot Hatcher; and that one of the officers reported that Hatcher was wiping his eyes and backing away when Bement shot Hatcher, establish that Bement's acts were not those of a reasonable officer. Thus, Bement should not be entitled to qualified immunity.

**A.   Wesley Bement is not entitled to the defense of Qualified Immunity.**

3.  To overcome the qualified immunity defense, a plaintiff must assert specific facts that, if proven, would (1) demonstrate the police violated clearly established statutory or constitutional rights, and (2) show that an objectively reasonable officer would have known his alleged conduct violated the law.[2]

4.  In *Graham v. O'Connor,* the U.S. Supreme Court established that when analyzing a qualified-immunity defense, the reasonableness of the use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight and that courts must look at the "totality of the circumstances" when assessing the reasonableness of a police officer's use of force.[3]

5.  In *Bazan v. Hidalgo County,* the court narrowed the test, holding that "[t]he excessive force inquiry is confined to whether the [officer] was in danger <u>at the moment of the threat</u> that

---

[2] *Batiste v. City of Beaumont,* 421 F.Supp.2d 969, 979 (E.D. Tex. 2005) (citing *Wicks v. Mississippi State Employment Servs.,* 41 F.3d 991, 995 (5th Cir. 1995)).
[3] *Graham v. Connor*, 490 U.S. 386,396-97 (1989).

resulted in the [officer's] shooting."[4] Thus, any actions of an officer or suspect leading up to the shooting are <u>not relevant</u> for the purposes of an excessive-force inquiry in this Circuit.[5]

6. In the present case, Bement and <u>five other</u> licensed and trained peace officers with guns were present on the scene, surrounding Hatcher, and standing within a few feet of Hatcher. Each of the five officers standing with Bement - trained on how to know when deadly force is reasonable and necessary - observed the situation as it happened, and not in hindsight. The five officers standing with Bement were engaged in effective non-deadly force. The five officers standing with Bement, some as close as three feet away from Hatcher at the moment Bement started shooting, had their guns holstered when Bement not only drew his gun, but fired - not once - but four times into Hatcher's body.

7. Had Bement's deadly and excessive force been reasonable as required by *Graham*, the other officers on the scene would have reacted similarly to Bement. Instead, not a single other officer even drew their weapons. Rather, all of the others were only engaged in non-lethal application of pepper spray.

8. In fact, one of the other peace officers on the scene, in a written incident report, reported that she was standing three feet from Hatcher applying pepper spray when Bement hit Hatcher with the first of four gunshots. This officer, standing three feet from Hatcher, did not have her gun drawn at the moment the shots were fired and she made no indication anywhere in her report that Hatcher was threatening her or anyone else at the moment shots were fired.

9. Indeed, the officer reported that, as Hatcher was <u>wiping his eyes</u> and <u>walking away from the officers</u>, all of the sudden, without any warning or notice, Bement opened fire. The officer,

---

[4] *Bazan* 246 F.3d at 493; *See also Harris* 745 F.3d at 772.
[5] *Id.*

standing three feet from Hatcher, reported that after the first shot, Hatcher started to fall backwards, yet Bement continued to shoot three more rounds into Hatcher.

10. Not even one of the five other officers on the scene with Bement perceived a "moment of threat" that required deadly force to resolve. Bement's use of deadly force was unreasonable under the circumstances at the time he shot and killed Hatcher, and as such, Bement should not be entitled to qualified immunity.

**B. Bement's additional facts do not establish that he is entitled to qualified immunity.**

11. The majority of the facts Bement asserts in his Answer that he claims entitle him to qualified immunity happened well before Bement ever became involved. The only facts relevant to Brement's qualified-immunity defense are those surrounding the moment Brement shoots Hatcher four times.[6] Further, each one of Bement's assertions fails to support his defense for the following reasons:

12. First, Bement states that Hatcher "overpowered" police and Target employees and that Hatcher was "observed using a knife or bladed instrument to commit the theft."[7] In addition to the activities at Target being irrelevant since Hatcher was not shot there, this statement creates the misleading impression that Hatcher might have been wielding a knife during the course of a robbery. Target initially called police to request a criminal-trespass ticket be issued after suspecting Hatcher of shoplifting a Wii-remote. Hatcher never used or threatened anyone with a knife. Indeed, Hatcher never presented a knife <u>at any time</u> during entire incident that day, nor was a knife recovered from Hatcher's body. No officer, including Bement, ever reported that Hatcher actually possessed a knife at any time during the incident.

---

[6] *Harris* 745 F.3d at 772. ("'[t]he excessive force inquiry is confined to whether the [officer] was in danger at the moment of the threat that resulted in the [officer's] shooting.' Therefore, any of the officers' actions leading up to the shooting are not relevant for the purposes of an excessive force inquiry in this Circuit."); *quoting Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir. Tex. 2001).
[7] *Id.*

13. Next Bement alleges that Hatcher had engaged in violent conduct prior to Bement encountering him.[8] Again, in addition to being irrelevant, Bement was not present at this earlier encounter, and deadly force was not used or even attempted by the police officers at Target. Every act leading up to Bement and the other officers surrounding Hatcher had only involved Hatcher's attempts to flee.

14. Next, Bement alleges that he was protecting the TCC campus and its students.[9] This does not provide Bement qualified immunity because there is no indication by any officer that Hatcher threatened any student; ever made an attempt to enter any building on the campus; or that any students were even in the general vicinity at that time. Further, at the moment Bement shot Hatcher, Hatcher was surrounded by six officers and was not a threat to any student.

15. Bement continues with allegations that his ineffectiveness of the taser entitled him to use deadly force.[10] The tazer failed to be effective because only one of the two probes entered Hatcher's body, causing a faulty circuit. Bement knew the taser Hatcher allegedly held was only armed with a one-shot cartridge and that cartridge had already been expended by Bement himself. To the contrary, the other officers did not know if the taser had another cartridge, yet the other offices made the determination that deadly force was still not the appropriate measure. One of the other officers even reported in his incident report that he knew the taser was capable of holding another cartridge and did not know if one was in the gun. Despite this knowledge, the officer never attempted to use deadly force. Two other officers were within a few feet of Hatcher using pepper spray right up to the moment of the killing and stated that they did not believe Hatcher's actions to rose to the level to warrant deadly force.

---

[8] *Id.*
[9] *Id.* at p. 8 ¶ 3.06.
[10] *Id.* at ¶3.08.

16.     Finally, Bement alleges that he shot his gun when Hatcher advanced on law enforcement officers.  At least one officer on the scene stated in her report that Hatcher was rubbing his eyes and moving away from the officers when the shots began.  Incident and investigation reports actually indicate that at least one officer was advancing on Hatcher to continue pepper spraying when the deadly shots began, and that Hatcher fired the gunshots without warning or notice.

17.     Under the totality of the circumstances at the moment of the shooting, the facts establish that Bements acts were unreasonable.  Six armed officers surrounded Hatcher at the time of the shooting; not one of the other five officers even drew his or her weapon; one of the officers closest to Hatcher was about to approach Hatcher to pepper spray him again; and one of the officers reported that Hatcher was wiping his eyes and backing away when Bement repeatedly shot Hatcher four times.  Brement's unreasonable conduct at the time of his shooting should not entitle him to a defense of qualified immunity, thus, Plaintiffs pray that this Court deny Bement's qualified immunity defense.

Respectfully submitted,

By: /s/Darren Wolf
Darren Wolf
Texas Bar No.  24072430
Darren@darrenwolf.com
Christianne Edlund
Texas Bar No. 24072083
christianne@darrenwolf.com
Law Office of Darren Wolf, P.C.
1701 N. Market Street, Suite 210
Dallas, Texas  75202
Phone (214) 346-5355
Fax. (214) 346-5909
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record this the 27th day of August, 2014 by electronic notice via the ECF System for the Northern District of Texas and pursuant to the Federal Rules of Civil Procedure.

                                                      */s/Darren Wolf*_____
                                                     Darren Wolf