IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFF HATCHER and MICHELLE HANSFORD, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:14-cv-432-M-BN |
| CITY OF GRAND PRAIRIE and WESLEY BEMENT, | § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

This case has been referred to the undersigned magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference. Defendants City of Grand Prairie and Wesley Bement ("Defendants") have filed second Federal Rule of Civil Procedure 12 motions seeking the dismissal of all claims brought in this civil rights action. *See* Dkt. Nos. 27 & 28. Plaintiffs filed responses, *see* Dkt. Nos. 32 & 33, and Defendants filed replies, *see* Dkt. Nos. 34 & 35. For the reasons explained below, the motion of the City of Grand Prairie ("The City" or "Grand Prairie") should be granted, and the motion of Officer Wesley Bement ("Officer Bement") should be denied.

**Background**

On February 4, 2014, Plaintiffs Jeff Hatcher and Michelle Hansford ("Plaintiffs"), individually and as the heirs of the estate of Jordan Ross Hatcher ("Hatcher"), filed this civil rights action against the City of Grand Prairie, Texas and Officer Wesley Bement of the Grand Prairie Police Department. *See* Dkt. No. 1.

Plaintiffs alleged that Officer Bement used excessive force against Hatcher in violation of 42 U.S.C. § 1983 and that Grand Prairie is liable for Officer Bement's use of excessive force because it failed to properly train and supervise its officers, provided excessive discretion to officers, and permitted and encouraged improper uses of force. Plaintiffs further claimed violations of Texas tort law against Grand Prairie because Officer Bement was acting within the course and scope of his employment when he injured Hatcher, and Plaintiffs sought punitive damages against both defendants.

On August 6, 2014, United States District Judge Barbara M.G. Lynn adopted the undersigned's Findings, Conclusions, and Recommendation, denied Officer Bement's motion to dismiss, granted in part and denied in part the City's motion to dismiss, and granted Officer Bement's request for a Rule 7(a) reply to his qualified immunity defense. *See* Dkt. Nos. 21 & 22. Specifically, the Court (1) concluded that Plaintiffs alleged sufficient facts to state a claim for the use of force that was excessive and unreasonable under the circumstances faced by Officer Bement; (2) concluded that Plaintiffs' complaint was deficient in failing to identify any particular policy or custom that led to the constitutional violations alleged in their complaint; (3) determined that Plaintiffs failed to state a claim for relief of deliberate indifference; and (4) concluded that Plaintiffs' tort claims brought under Texas law were barred by sovereign immunity. *See id.* But the Court granted Officer Bement's request for a Rule 7(a) reply and ordered Plaintiffs to file a pleading that provides more detail about the totality of circumstances faced by Officer Bement and Hatcher's own conduct when confronted by

the officer, in order to comply with the heightened pleading required when the defense of qualified immunity is raised. *See id.*

On August 27, 2014, Plaintiffs filed a First Amended Complaint and a Rule 7(a) reply. *See* Dkt. Nos. 25 & 26. In their amended complaint, Plaintiffs allege that, on or about January 24, 2013, officers with the Grand Prairie Police Department were dispatched to a Target retail store to investigate an allegation of attempted theft of a video game controller. Plaintiffs allege that Hatcher, unarmed, briefly struggled with an officer and then fled the Target property. Hatcher was discovered nearby a short time later and was surrounded by at least five Tarrant County College ("TCC") Police Officers and Officer Bement. Although Hatcher was unarmed and surrounded by six officers, Officer Bement allegedly attempted to shoot Hatcher with his taser but missed. According to Plaintiffs, Officer Bement then tried to shock Hatcher directly with the taser, and two TCC police officers simultaneously sprayed Hatcher in the face with mace or pepper spray. Plaintiffs explain:

> 16.   .... While Hatcher was being sprayed in the face by TCC Police Officer[s], Bement retreated and left his taser lodged under the arm of Hatcher.
> 17.   The TCC Officers, without ever drawing their guns, were effective with their mace/pepper spray. Hatcher began to walk slowly away, still holding Bement's unloaded taser, and rubbing his eyes and face.
> 18.   Without warning, while a TCC Officer was going in to spray Hatcher again, and while Hatcher did not pose a threat, Bement drew his gun and fired four hollow point bullets into the body of Hatcher.
> 19.   The person closest to Hatcher when he was shot, a TCC Police Officer, was nearly shot by Bement, did not have her gun drawn, was not being attacked, was attempting to spray Hatcher with her mace/pepper spray, and did not understand why Bement was shooting.
> 20.   As Hatcher rubbed his eyes, Bement shot Hatcher repeatedly until he was dead.

Dkt. 25 at 3-4.

Plaintiffs contend that this conduct constitutes excessive, unreasonable, and unnecessary force under the Fourth Amendment. *See id.* at 4-5. They urge that Officer Bement's unconstitutional actions were the direct result of Grand Prairie's "customs, practices, and policies" that permit or do not prohibit officers from shooting and/or tasering suspects simply for non-compliance with officer commands and that the City is liable for the conduct of Officer Bement. *Id.* at 5-6. In their Rule 7(a) reply, Plaintiffs add further detail to their description of the totality of circumstances faced by Officer Bement and Hatcher's own conduct when confronted by the officer. *See* Dkt. No. 26. They explain that:

- Six armed officers surrounded Hatcher at the time of the shooting, some as close as three feet away;

- The other five officers did not have their weapons drawn;

- The other officers did not find it necessary to threaten or utilize lethal force;

- The officer closest to Hatcher was about to approach him to administer pepper spray when Officer Bement shot Hatcher;

- Hatcher was wiping his eyes and backing away when Officer Bement shot him;

- The officer closest to Hatcher did not indicate that he was threatening her or anyone else when the shots were fired;

- Hatcher was shot without warning or notice;

- Hatcher was shot three additional times despite the fact that he was falling backwards after the first gunshot;

- Hatcher never used or threatened anyone with a knife;

- Hatcher never presented a knife at any time during the entire incident, nor was a knife recovered from his body;

- No other officer reported that Hatcher actually possessed a knife at any time during the incident; and

- There is no indication by any officer that Hatcher threatened any student, ever made an attempt to enter any building on the campus, or that any students were in the general vicinity at the time.

*Id.* at 2-6.

Officer Bement again filed an answer invoking the affirmative defense of qualified immunity. *See* Dkt. No. 30. He alleges:

> 3.03   Decedent Hatcher's actions at the Target Store were a felony – he stole property and committed at least three assaults in the course of that theft. He was observed using a knife or bladed instrument to commit the theft. He overpowered two Target employees and a uniformed Grand Prairie Police Officer. A Grand Prairie Police Officer attempted to use a Taser on Hatcher at the Target Store and such use of the Taser was ineffective. His own conduct caused the law enforcement action involved in this incident.
> 3.04   Information made available to Law Enforcement Officers responding to this matter, indicated that Hatcher might have been armed with at least a knife. Officer Bement was aware that Hatcher might be armed with a knife.
> 3.05   Prior to the encounter with Officer Bement, Hatcher had already exhibited violent conduct as he escaped, and it was reported he would fight, information communicated by Police dispatchers to responding Law Enforcement Officers.
> 3.06   Hatcher entered the TCC campus at a time when students were present and occupying classroom facilities. Law Enforcement Officers, including TCC Police Officers, attempted to intercept Hatcher to keep this violent and possibly armed person from entering facilities occupied by students.
> 3.07   When a number of Law Enforcement Officers, which included Bement, attempted to cause Hatcher to surrender at the TCC campus, Hatcher refused to do so.

   3.08 When Defendant Officer Bement lawfully deployed his Taser device against Hatcher, it was not effective. When Defendant Officer Bement next tried to use the Taser to make direct contact on Hatcher (a "drive stun") in accordance with his training, Hatcher was not affected by the device in a drive stun mode. Hatcher struggled with Bement and Hatcher tried to seize the Taser device from Bement.
   3.09 Law Enforcement Officers lawfully used pepper spray on Hatcher and it appeared to have no effect on Hatcher. Bement was struck by pepper spray administered by other Law Enforcement Officers aimed at Hatcher because of Bement's close proximity to Hatcher. The pepper spray striking Bement did have an effect on Bement.
   3.10 When the pepper spray struck Officer Bement, Hatcher then gained possession of the Taser. Bement reasonably believed the Taser device was functional and could deliver painful and disabling electric shock and potentially could cause serious bodily injury if Hatcher used the Taser in the "drive stun mode." Hatcher was holding the Taser in his hand in a ready for use position and pointed the Taser at Law Enforcement Officers.
   3.11 Hatcher refused to surrender, would not give up the Taser device, and had advanced on a Law Enforcement Officer with the device in his hand when Defendant Officer Bement lawfully fired shots at Hatcher.

Dkt. No. 30 at 6-8.

## Legal Standards

Because a post-answer Federal Rule of Civil Procedure 12(b)(6) motion is untimely, the Court must consider Defendants' motions to seek dismissal on the basis of the pleadings under Federal Rule of Civil Procedure 12(c). *See Gill v. Devlin*, 867 F. Supp. 2d 849, 853 (N.D. Tex. 2012). In deciding a Rule 12(c) motion, the Court may only consider allegations in the pleadings and incorporated exhibits, including a Rule 7 reply and the defendant's answer. *See id.*

The standard for dismissal on the pleadings under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *See Ackerson v. Bean*

*Dredging, LLC,* 589 F.3d 196, 209 (5th Cir. 2009). In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

A municipality may be held liable for the deprivation of rights guaranteed by the Constitution or federal law only if the deprivation was the result of an official policy. *See Monell v. Dep't of Social Servs. of N.Y.,* 436 U.S. 658, 694 (1978). Such a policy may include "'a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir. 1995) (quoting *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984)). But "[i]t is well-established that a city is not liable under § 1983 on the theory of respondeat superior." *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 847 (5th Cir. 2009). To establish municipal liability under 42 U.S.C. § 1983, plaintiff must prove three elements: "'(1) a policymaker; (2) an official policy; and (3) violation of constitutional rights whose moving force is the policy or custom.'" *Hampton Co. Nat'l Surety, LLC v. Tunica Cnty.,* 543 F.3d 221, 227 (5th Cir. 2008) (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001)). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't,* 130 F.3d 162, 167 (5th Cir. 1997).

In certain extreme circumstances, a single act by a municipal employee may form the basis of municipal liability apart from a pattern of unconstitutional activity. *See Bd. of Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 410 (1997); *see also Bryan v. Brown Cnty., Okla.,* 219 F.3d 450, 459 (5th Cir. 2000). To rely on this exception, a plaintiff must prove that the "highly predictable" consequence of a failure to train

would result in the specific injury suffered and that the failure to train represented the "moving force" behind the constitutional violation. *Bryan,* 219 F.3d at 461.

## Analysis

Officer Bement contends that Plaintiffs' claims should be dismissed in their entirety. He urges that Plaintiffs have not carried their burden to state a claim for excessive force that overcomes his qualified immunity defense based on the totality of the circumstances. *See* Dkt. No. 28. Grand Prairie argues that Plaintiffs fail to state a claim for *Monell* liability because Plaintiffs' complaint does not sufficiently identify a policymaker or a policy or custom that led to the constitutional violations alleged. *See* Dkt. No. 27.

Excessive Force

The undersigned concludes that Plaintiffs have alleged sufficient facts in their complaint and Rule 7(a) reply to state a claim for excessive force and have satisfied the heightened pleading standard applied where a qualified immunity defense is raised. To prevail on a Fourth Amendment excessive force claim in the context of an arrest or investigatory stop, a plaintiff must establish: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005); *see also Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). Plaintiffs' allegations, accepted as true and viewed in the light most favorable to them, state a claim for excessive force plausible on its face. *See Katrina,* 495 F.3d at 205. Specifically, they allege the non-conclusory facts that Hatcher, who was accused of the non-violent

offense of attempted theft of a video game controller, was unarmed and surrounded by six armed officers, that Hatcher never threatened Officer Bement or any other officer, that Hatcher never possessed a knife or firearm, that Hatcher was incapacitated by pepper spray before he was shot, that there were a sufficient number of officers on scene to subdue Hatcher without the need to resort to deadly force, that none of the other officers chose to threaten or utilize deadly force, and that Hatcher was shot an additional three times after the initial gunshot. *See* Dkt. Nos.25 & 26.

Apprehension by the use of deadly force is a Fourth Amendment seizure, *see Carnaby v. City of Houston,* 636 F.3d 183, 187 (5th Cir. 2011) (citing *Tennessee v. Garner,* 471 U.S. 1, 7 (1985)), and Hatcher's death was an injury caused by the deadly force employed, so the only issue is whether Plaintiffs have met the heightened pleading standard to state a plausible claim that the use of that deadly force was unreasonable given the totality of circumstances. To gauge the objective reasonableness of the force, a court "must balance the amount of force used against the need for force." *Ramirez v. Knoulton,* 542 F.3d 124, 129 (5th Cir. 2008) (internal quotation marks and citation omitted). The "[u]se of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine,* 333 F.3d 621, 624 (5th Cir. 2003). The inquiry into reasonableness is fact-specific and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396-97 (1989).

At this stage of the proceedings, the burden is on the Plaintiffs to plead a

sufficient factual case to disprove Officer Bement's qualified immunity defense. *See Gill,* 867 F. Supp. 2d at 855; *see also Porter v. Valdez,* 424 F. App'x 382, 386 (5th Cir. 2011) (discussing Rule 12(c) burden when qualified immunity is asserted and a Rule 7 reply has been submitted). "[R]eview of defendants' qualified-immunity assertion requires review of the sufficiency of plaintiffs' complaint because ... whether a sufficient claim is pleaded is both inextricably intertwined with, and directly implicated by, the qualified immunity defense asserted in response to the complaint." *Porter,* 424 F. App'x at 386 (citing *Iqbal,* 129 S. Ct. at 1946-47; internal quotation marks omitted); *see also Pecena v. Martin,* No. 3:11-cv-2325-BD, 2012 WL 3627643, at *2 (N.D. Tex. Aug. 23, 2012) (citing cases) (plaintiffs "must allege particularized facts which, if proved, would defeat a qualified immunity defense.").

The undersigned concludes that Plaintiffs have plead facts with sufficient particularity that, if proved, would establish that Officer Bement's conduct violated a clearly established constitutional right and that it would be clear to a reasonable officer that such conduct – given the totality of the circumstances presented to Officer Bement – would be unlawful. Looking only at the pleadings (including the Rule 7(a) reply and Officer Bement's answer) and accepting Plaintiffs' factual allegations as true for purposes of the Rul 12(c) motion, as the Court must, the undersigned concludes that Plaintiffs have pled a facially plausible claim that the use of deadly force was excessive and unreasonable under the circumstances faced by Officer Bement.

Plaintiffs have alleged sufficient facts to state a plausible Fourth Amendment excessive force claim, so Officer Bement is not entitled to qualified immunity on the

basis of the pleadings alone. The Rule 12(c) motion to dismiss on this ground should therefore be denied.

Municipal Liability

Grand Prairie contends that Plaintiffs have again failed to state a claim for municipal liability because they do not properly identify a policymaker or provide any specific facts to establish any custom or policy that led to the constitutional violations alleged by Plaintiffs. *See* Dkt. No. 27.

Even assuming *arguendo* that Grand Prairie has delegated to Chief of Police Steve Dye the final policymaking authority over the areas surrounding the use of force for non-compliance with officer commands, *see* Dkt. No. 25 at 5-6; *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986), and that Plaintiffs properly pled such policymaking authority, Plaintiffs' allegations of municipal liability do not state a claim for relief.

Plaintiffs fail to allege any factual basis to support a particular policy or custom – formal or informal – that led to the constitutional violations alleged in their complaint. They contend that,

> The City under the approval and direction of Chief-of-Police Steve Dye, enforces a custom that:
> a. allows for their officers to shoot suspects for non-compliance with officer commands only; and
> b. allows for their officers to tase suspects for non-compliance with officer commands only.
>
> Further, the City has a policy that:
> a. does not prohibit officers from shooting suspects for non-compliance with officer commands only; and
> b. does not prohibit officers from tasing suspects for

non-compliance with officer commands only.

Dkt No. 25 at 5-6. Plaintiffs further allege that "[t]he City knew or should have known that these customs, practices, and policies would result in the violation of constitutional rights of individuals like Hatcher." *Id.* at 6. They do not allege facts to establish any other instances where an individual has been shot or tasered for non-compliance with officer commands alone or any other information to suggest that any such conduct constitutes an unwritten custom of Grand Prairie. *See id.*

These conclusory assertions do not allege any specific policy or custom of the City that led to the alleged constitutional violations at issue in this lawsuit. As United States District Judge Sam A. Lindsay has explained,

> [r]equiring a plaintiff to identify the specific policy or custom and allege that the policy or custom adopted by the municipality or policymaking official was the "moving force" behind the constitutional violation is in no way inconsistent with notice pleading or the mandate of *Leatherman*. Such requirement actually complements Rule 8 in that it puts a defendant on notice of the grounds on which a plaintiff's claim rests. In other words, the allegations of a complaint must not be conclusory; otherwise, a defendant is not placed on notice of the grounds for the claim. Conclusory allegations cannot survive a motion to dismiss.

*Henrise v. Horvath*, 174 F. Supp. 2d 493, 502 (N.D. Tex. 2001) (citing *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992)). A plaintiff must identify the policy, connect the policy to the governmental entity itself, and show that his injury was incurred because of the application of that specific provision. *See White v. Jackson*, No. 7:13-cv-50-O, 2014 WL 99976, at *4 (N.D. Tex. Jan. 10, 2014) (citing *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir. 1984)).

Plaintiffs do not point to any statement, ordinance, regulation, or decision that

is alleged to be the official policy of Grand Prairie. Plaintiffs instead appear to rely solely on a belief that unwritten customs permit – or do not prohibit – officers from shooting or tasering suspects "for non-compliance with officer commands only." Dkt. No. 25 at 5-6. Plaintiffs have not plead any facts which, taken as true, show that the use of force by Officer Bement was taken pursuant to an official policy or that there has been a pattern of similar constitutional violations sufficient to allow the Court to reasonably infer an illegal custom. Plaintiffs' allegations are about one incident involving Officer Bement, which they allege resulted in a constitutional deprivation, from which Plaintiffs ask the Court to infer that Grand Prairie had a *de facto* policy or customary practice of allowing excessive force by its peace officers or that Grand Prairie engaged in ratification by inaction.

But pleadings pertaining to individual actions taken in this specific case do not suffice to establish a pattern necessary for municipal liability based on custom or practice. *See White*, 2014 WL 99976, at *6 (citing *Bennett,* 728 F.2d at 768 n.3). That is, they do not show that "the relevant practice is so widespread as to have the force of law." *Brown,* 520 U.S. at 404; *see also Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (to establish an informal municipal custom, a plaintiff must demonstrate persistent, repeated, or constant violations).

The First Amended Complaint essentially provides no more than a "formulaic recitations of the elements of a cause of action," or "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. This is not an instance of a complaint's containing "an imperfect statement of the legal theory supporting the claim asserted"

– rather, Plaintiffs have failed to plead factual allegations "sufficient to show that her claim has substantive plausibility" by stating "simply, concisely, and directly events that, they alleged, entitled them to damages from the [City]." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014).

Plaintiffs have failed to adequately allege that Grand Prairie's actions, through its duly enacted or informal policies or customs promulgated by its policymakers, were the motivating force behind any alleged constitutional deprivation. It is not enough to plead that, because an officer did something wrong, the officer must have acted pursuant to some undisclosed custom, practice, or policy that permits such wrongdoing. Despite being given another opportunity to "inform[] the [City] of the factual basis for their complaint," Plaintiffs' factual allegations in their amended complaint are insufficient to nudge their claims of municipal liability from conceivable to plausible. *Id.*

Where the Court already gave Plaintiffs an opportunity to replead and state their best case, Plaintiffs' Section 1983 claim against Grand Prairie should be dismissed with prejudice for failure to state a claim.

**Recommendation**

Defendant Wesley Bement's Second Motion to Dismiss [Dkt. No. 28] should be denied. The City of Grand Prairie's Second Motion to Dismiss [Dkt. No. 27] should be granted with prejudice. Should any claims survive following District Judge Barbara M.G. Lynn's consideration of these Findings, Conclusions, and Recommendation, the undersigned magistrate judge will resume pretrial management and enter appropriate

orders so that the affirmative defense of qualified immunity will be decided on an expedited basis by way of summary judgment motion. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (noting that "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation").

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 15, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE