IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFF HATCHER and MICHELLE HANSFORD, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:14-cv-432-M-BN |
| WESLEY BEMENT, | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER ON MOTION FOR LEAVE TO CONDUCT DISCOVERY AND REQUIRING CONFERENCE AND JOINT STATUS REPORT**

Plaintiffs Jeff Hatcher and Michelle Hansford ("Plainitffs") have filed a motion for leave to conduct discovery, *see* Dkt. No. 44, in response to Defendant Wesley Bement's motion for summary judgment on his affirmative defense of qualified immunity, *see* Dkt. No. 40. For the reasons set forth below, Plaintiffs' motion is GRANTED in part.

**Background**

On February 4, 2014, Plaintiffs, individually and as the heirs of the estate of Jordan Ross Hatcher ("Hatcher"), filed this civil rights action against the City of Grand Prairie, Texas ("Grand Prairie") and Officer Wesley Bement of the Grand Prairie Police Department ("Officer Bement"). *See* Dkt. No. 1. Plaintiffs alleged that Officer Bement used excessive force against Hatcher in violation of 42 U.S.C. § 1983 and that Grand Prairie is liable for Officer Bement's use of excessive force because it failed to properly

train and supervise its officers, provided excessive discretion to officers, and permitted and encouraged improper uses of force. Plaintiffs further claimed violations of Texas tort law against Grand Prairie because Officer Bement was acting within the course and scope of his employment when he injured Hatcher, and Plaintiffs sought punitive damages against both defendants.

On August 6, 2014, United States District Judge Barbara M.G. Lynn adopted the undersigned United States magistrate judge's Findings, Conclusions, and Recommendation, denied Officer Bement's motion to dismiss, granted in part and denied in part the City's motion to dismiss, and granted Officer Bement's request for a Federal Rule of Civil Procedure 7(a) reply to his qualified immunity defense. *See* Dkt. Nos. 21 & 22. Specifically, the Court (1) concluded that Plaintiffs alleged sufficient facts to state a claim for the use of force that was excessive and unreasonable under the circumstances that Officer Bement faced; (2) concluded that Plaintiffs' complaint was deficient in failing to identify any particular policy or custom that led to the constitutional violations alleged in their complaint; (3) determined that Plaintiffs failed to state a claim for relief of deliberate indifference; and (4) concluded that Plaintiffs' tort claims brought under Texas law were barred by sovereign immunity. *See id.* But the Court granted Officer Bement's request for a Rule 7(a) reply and ordered Plaintiffs to file a pleading that provides more detail about the totality of circumstances that Officer Bement faced and about Hatcher's own conduct when confronted by the officer, in order to comply with the heightened pleading required when the defense of qualified immunity is raised. *See id.*

On August 27, 2014, Plaintiffs filed a First Amended Complaint and a Rule 7(a) reply. *See* Dkt. Nos. 25 & 26. In their amended complaint, Plaintiffs alleged that, on or about January 24, 2013, officers with the Grand Prairie Police Department were dispatched to a Target retail store to investigate an allegation of attempted theft of a video game controller. Plaintiffs allege that Hatcher, unarmed, briefly struggled with an officer and then fled the Target property. Hatcher was discovered nearby a short time later and was surrounded by at least five Tarrant County College ("TCC") Police Officers and Officer Bement. Although Hatcher was unarmed and surrounded by six officers, Officer Bement allegedly attempted to shoot Hatcher with his taser but missed. According to Plaintiffs, Officer Bement then tried to shock Hatcher directly with the taser, and two TCC police officers simultaneously sprayed Hatcher in the face with mace or pepper spray. Plaintiffs explain:

> 16.  .... While Hatcher was being sprayed in the face by TCC Police Officer[s], Bement retreated and left his taser lodged under the arm of Hatcher.
>
> 17.  The TCC Officers, without ever drawing their guns, were effective with their mace/pepper spray. Hatcher began to walk slowly away, still holding Bement's unloaded taser, and rubbing his eyes and face.
>
> 18.  Without warning, while a TCC Officer was going in to spray Hatcher again, and while Hatcher did not pose a threat, Bement drew his gun and fired four hollow point bullets into the body of Hatcher.
>
> 19.  The person closest to Hatcher when he was shot, a TCC Police Officer, was nearly shot by Bement, did not have her gun drawn, was not being attacked, was attempting to spray Hatcher with her mace/pepper spray, and did not understand why Bement was shooting.
>
> 20.  As Hatcher rubbed his eyes, Bement shot Hatcher repeatedly until he was dead.

Dkt. No. 25 at 3-4.

Plaintiffs contended that this conduct constitutes excessive, unreasonable, and unnecessary force under the Fourth Amendment. *See id.* at 4-5. They urged that Officer Bement's unconstitutional actions were the direct result of Grand Prairie's "customs, practices, and policies" that permit or do not prohibit officers from shooting and/or tasering suspects simply for non-compliance with officer commands and that the City is liable for the conduct of Officer Bement. *Id.* at 5-6. In their Rule 7(a) reply, Plaintiffs added further detail to their description of the totality of circumstances faced by Officer Bement and Hatcher's own conduct when confronted by the officer. *See* Dkt. No. 26. They explained that:

- Six armed officers surrounded Hatcher at the time of the shooting, some as close as three feet away;

- The other five officers did not have their weapons drawn;

- The other officers did not find it necessary to threaten or utilize lethal force;

- The officer closest to Hatcher was about to approach him to administer pepper spray when Officer Bement shot Hatcher;

- Hatcher was wiping his eyes and backing away when Officer Bement shot him;

- The officer closest to Hatcher did not indicate that he was threatening her or anyone else when the shots were fired;

- Hatcher was shot without warning or notice;

- Hatcher was shot three additional times despite the fact that he was falling backwards after the first gunshot;

- Hatcher never used or threatened anyone with a knife;

- Hatcher never presented a knife at any time during the entire incident, nor was a knife recovered from his body;

- No other officer reported that Hatcher actually possessed a knife at any time during the incident; and

- There is no indication by any officer that Hatcher threatened any student, ever made an attempt to enter any building on the campus, or that any students were in the general vicinity at the time.

*Id.* at 2-6.

Officer Bement again filed an answer invoking the affirmative defense of qualified immunity. *See* Dkt. No. 30. He alleged:

> 3.03   Decedent Hatcher's actions at the Target Store were a felony – he stole property and committed at least three assaults in the course of that theft. He was observed using a knife or bladed instrument to commit the theft. He overpowered two Target employees and a uniformed Grand Prairie Police Officer. A Grand Prairie Police Officer attempted to use a Taser on Hatcher at the Target Store and such use of the Taser was ineffective. His own conduct caused the law enforcement action involved in this incident.
>
> 3.04   Information made available to Law Enforcement Officers responding to this matter, indicated that Hatcher might have been armed with at least a knife. Officer Bement was aware that Hatcher might be armed with a knife.
>
> 3.05   Prior to the encounter with Officer Bement, Hatcher had already exhibited violent conduct as he escaped, and it was reported he would fight, information communicated by Police dispatchers to responding Law Enforcement Officers.
>
> 3.06   Hatcher entered the TCC campus at a time when students were present and occupying classroom facilities. Law Enforcement Officers, including TCC Police Officers, attempted to intercept Hatcher to keep this violent and possibly armed person from entering facilities occupied by students.

>  3.07   When a number of Law Enforcement Officers, which included Bement, attempted to cause Hatcher to surrender at the TCC campus, Hatcher refused to do so.
>
>  3.08   When Defendant Officer Bement lawfully deployed his Taser device against Hatcher, it was not effective. When Defendant Officer Bement next tried to use the Taser to make direct contact on Hatcher (a "drive stun") in accordance with his training, Hatcher was not affected by the device in a drive stun mode. Hatcher struggled with Bement and Hatcher tried to seize the Taser device from Bement.
>
>  3.09   Law Enforcement Officers lawfully used pepper spray on Hatcher and it appeared to have no effect on Hatcher. Bement was struck by pepper spray administered by other Law Enforcement Officers aimed at Hatcher because of Bement's close proximity to Hatcher. The pepper spray striking Bement did have an effect on Bement.
>
>  3.10   When the pepper spray struck Officer Bement, Hatcher then gained possession of the Taser. Bement reasonably believed the Taser device was functional and could deliver painful and disabling electric shock and potentially could cause serious bodily injury if Hatcher used the Taser in the "drive stun mode." Hatcher was holding the Taser in his hand in a ready for use position and pointed the Taser at Law Enforcement Officers.
>
>  3.11   Hatcher refused to surrender, would not give up the Taser device, and had advanced on a Law Enforcement Officer with the device in his hand when Defendant Officer Bement lawfully fired shots at Hatcher.

Dkt. No. 30 at 6-8.

Simultaneous with filing answers, Officer Bement – as well as, separately, Grand Prairie – again moved to dismiss. See Dkt. Nos. 27 & 28. The undersigned construed the post-answer Federal Rule of Civil Procedure 12(b)(6) motions as motions seeking dismissal on the basis of the pleadings under Federal Rule of Civil Procedure 12(c), and recommended that Plaintiffs' Section 1983 claim against Grand Prairie be dismissed with prejudice for failure to state a claim, *see* Dkt. No. 36 at 12-15, but that,

as to Officer Bement, "Plaintiffs have alleged sufficient facts to state a plausible Fourth Amendment excessive force claim, so Officer Bement is not entitled to qualified immunity on the basis of the pleadings alone. The Rule 12(c) motion to dismiss on this ground should therefore be denied[,]" *id.* at 11-12. The Court adopted the undersigned's recommendation on January 14, 2015. *See* Dkt. No. 37.

Because the previous findings and conclusions as to Officer Bement bear on the issue now before the Court, they are set out in full below:

> The undersigned concludes that Plaintiffs have alleged sufficient facts in their complaint and Rule 7(a) reply to state a claim for excessive force and have satisfied the heightened pleading standard applied where a qualified immunity defense is raised. To prevail on a Fourth Amendment excessive force claim in the context of an arrest or investigatory stop, a plaintiff must establish: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005); *see also Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). Plaintiffs' allegations, accepted as true and viewed in the light most favorable to them, state a claim for excessive force plausible on its face. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Specifically, they allege the non-conclusory facts that Hatcher, who was accused of the non-violent offense of attempted theft of a video game controller, was unarmed and surrounded by six armed officers, that Hatcher never threatened Officer Bement or any other officer, that Hatcher never possessed a knife or firearm, that Hatcher was incapacitated by pepper spray before he was shot, that there were a sufficient number of officers on scene to subdue Hatcher without the need to resort to deadly force, that none of the other officers chose to threaten or utilize deadly force, and that Hatcher was shot an additional three times after the initial gunshot. *See* Dkt. Nos.25 & 26.
>
> Apprehension by the use of deadly force is a Fourth Amendment seizure, *see Carnaby v. City of Houston,* 636 F.3d 183, 187 (5th Cir. 2011) (citing *Tennessee v. Garner,* 471 U.S. 1, 7 (1985)), and Hatcher's death was an injury caused by the deadly force employed, so the only issue is whether Plaintiffs have met the heightened pleading standard to state a

plausible claim that the use of that deadly force was unreasonable given the totality of circumstances. To gauge the objective reasonableness of the force, a court "must balance the amount of force used against the need for force." *Ramirez v. Knoulton,* 542 F.3d 124, 129 (5th Cir. 2008) (internal quotation marks and citation omitted). The "[u]se of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine,* 333 F.3d 621, 624 (5th Cir. 2003). The inquiry into reasonableness is fact-specific and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396-97 (1989).

At this stage of the proceedings, the burden is on the Plaintiffs to plead a sufficient factual case to disprove Officer Bement's qualified immunity defense. *See Gill v. Devlin*, 867 F. Supp. 2d 849, 855 (N.D. Tex. 2012); *see also Porter v. Valdez*, 424 F. App'x 382, 386 (5th Cir. 2011) (discussing Rule 12(c) burden when qualified immunity is asserted and a Rule 7 reply has been submitted). "[R]eview of defendants' qualified-immunity assertion requires review of the sufficiency of plaintiffs' complaint because ... whether a sufficient claim is pleaded is both inextricably intertwined with, and directly implicated by, the qualified immunity defense asserted in response to the complaint." *Porter*, 424 F. App'x at 386 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1946-47 (2009); internal quotation marks omitted); *see also Pecena v. Martin*, No. 3:11-cv-2325-BD, 2012 WL 3627643, at *2 (N.D. Tex. Aug. 23, 2012) (citing cases) (plaintiffs "must allege particularized facts which, if proved, would defeat a qualified immunity defense.").

The undersigned concludes that Plaintiffs have plead facts with sufficient particularity that, if proved, would establish that Officer Bement's conduct violated a clearly established constitutional right and that it would be clear to a reasonable officer that such conduct – given the totality of the circumstances presented to Officer Bement – would be unlawful. Looking only at the pleadings (including the Rule 7(a) reply and Officer Bement's answer) and accepting Plaintiffs' factual allegations as true for purposes of the Rule 12(c) motion, as the Court must, the undersigned concludes that Plaintiffs have pled a facially plausible claim that the use of deadly force was excessive and unreasonable under the circumstances faced by Officer Bement.

Dkt. No. 36 at 9-11 (some citations modified).

**Legal Standards**

<u>Qualified Immunity</u>

"The doctrine of qualified immunity shields 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011)) (internal quotation marks omitted).

While review of a motion for summary judgment based on qualified immunity is accomplished in two steps, a court may conduct the following examination "in any order." *Luna*, 773 F.3d at 718 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)); *see also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014) (there is "discretion to decide which of the two steps of qualified immunity to address first").

One prong of the analysis requires the Court to decide "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional or statutory right." *Luna*, 773 F.3d at 718 (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). Put another way, the question is "whether the plaintiff has alleged a violation of a

constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

The other prong requires the Court to decide "'whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Luna*, 773 F.3d at 718 (quoting *Flores*, 381 F.3d at 395). Even if a government official's conduct violates a clearly established right, the official is entitled to immunity if his conduct was objectively reasonable. *See Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008). Taken together, this prong of the analysis requires the Court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511; *see also Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) ("The dispositive inquiry, we have said, is whether it would have been clear to a reasonable officer in the [defendant's] position that [his or her] conduct was unlawful in the situation [he or she] confronted." (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (internal quotation marks and brackets omitted from original))); *Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th Cir. 2004) (per curiam) ("The court must first identify the relevant clearly established law[ and t]hen ... determine whether the defendant's actions were objectively reasonable." (citing *Petta v. Rivera*, 133 F.3d 330, 334 (5th Cir. 1998))).

As to whether the law at the time of an incident was clearly established, even if the Court assumes that each right that a plaintiff asserts did apply in his or her case, each right must be defined at the appropriate level of specificity for the Court to determine that the right was "clearly established." While "'a case directly on point'" is not necessarily required to "conclud[e] that the law is clearly established, '[ ] existing

precedent must have placed the statutory or constitutional question beyond debate.'" *Stanton*, 134 S. Ct. at 5 (quoting *al-Kidd*, 131 S.Ct. at 2085). The Court, moreover, may not "'define clearly established law at a high level of generality,' since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quoting *al-Kidd*, 131 S. Ct. at 2084).

Essential to the "clearly-established inquiry is 'fair warning,'" which requires the Court to "ask 'not only whether courts have recognized the existence of a particular constitutional right, but also ... whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct.'" *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) (respectively quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002) (en banc) (per curiam)).

> In sum,
>
> [w]hen deciding whether the right allegedly violated was "clearly established," the court asks whether the law so clearly and unambiguously prohibited the conduct that every reasonable official would understand that what he is doing violates the law. Answering in the affirmative requires the court to be able to point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity. This requirement establishes a high bar. When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity.

*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (citing *Morgan*, 659 F.3d at 371-72) (internal citations and quotation marks omitted).

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon*, 305 F.3d at 323; *see Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks omitted)); *see also Brooks v. City of West Point*, 18 F. Supp. 3d 790, 794 (N.D. Miss. 2014) ("The usual summary judgment burden of proof is altered somewhat in the case of a qualified immunity defense." (citing *Gates v. Tex. Dep't of Prot. & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008))).

"[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Therefore, even where the qualified immunity defense is raised by motion for summary judgment, the Court "must first determine whether the allegations in [the] complaint are sufficient to negate [the] assertions of qualified immunity." *Fleming v. Tunica County*, 497 F. App'x 381, 388 (5th Cir. Oct. 5, 2012) (per curiam) (citing *Backe*, 691 F.3d at 648; *Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 995 (5th Cir.1995)). This "demands more than bald allegations and conclusionary statements." *Wicks*, 41 F.3d at 995. A plaintiff "must allege facts specifically focusing on the conduct of [the defendant] which caused his injury." *Id.* "In the summary-judgment posture, the Court 'looks to the evidence before it (in the light most favorable to the plaintiff).'" *Brooks*, 18

F. Supp. 3d at 795 (quoting *McClendon*, 305 F.3d at 323 (in turn quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996))) (internal quotation marks omitted).

The qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Harlow*, 457 U.S. at 818; *see also Haverda v. Hays County*, 723 F.3d 586, 599 (5th Cir. 2013). "'If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment.'" *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)). Although summary judgment ultimately may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this "has nothing to do with the qualified immunity defense." *Id.*

<u>Limited Qualified Immunity Discovery</u>

Even if a plaintiff satisfies the heightened pleading standard, the only discovery that the Court may permit at this stage in the proceedings are discovery requests that are narrowly tailored to uncover facts that the Court needs to rule on the qualified immunity defense itself. *See Wicks*, 41 F.3d at 994 (citing *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987)); *accord Backe*, 691 F.3d at 648 ("*After* the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity

defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" (quoting *Lion Boulos*, 834 F.2d at 507-08)); *see also Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) ("[I]f the actions [that a defendant official] claims he took are different from those the [plaintiff] allege[s] ... then discovery may be necessary before [the official]'s motion for summary judgment on qualified immunity grounds can be resolved."); *Watkins v. Hawley*, 4:12-CV–54–KS–MTP, 2013 WL 3357703, at *1 (S.D. Miss. July 3, 2013) ("While qualified immunity was intended to shield a defendant from the burdens of litigation, it does not shield defendants from discovery when there are genuine disputes of material fact which are relevant to the application of qualified immunity." (citing *Behrens v. Pelletier*, 516 U.S. 299, 307-08 (1996))).

Any requested discovery must be narrowly tailored to uncover only those facts needed to rule on the immunity claim and is only permitted if (1) a defendant's immunity claim turns at least partially on a factual question and (2) the Court is unable to rule on the immunity defense without further clarification of the facts. *See Lion Boulos*, 834 F.2d at 507-08; *see also Khansari v. City of Houston*, 14 F. Supp. 2d 842, 861 (S.D. Tex. 2014) ("The Fifth Circuit['s] ... careful procedure [allows] a district court [to] defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense."); *Douglas v. Miss. Crime Lab.*, No. 3:12-CV-00203-HTW-MTP, 2013 WL 6230084, at *10-*11 (S.D. Miss. Nov. 30, 2013) (denying Rule 56(d) request for discovery, finding no "discovery to be necessary to determine whether the pleadings state a claim that would overcome a qualified

immunity defense" because plaintiffs both failed to state a claim against the official and failed to respond to the qualified immunity defense); *De La Paz v. Coy*, 954 F. Supp. 2d 532, 549 (W.D. Tex. 2013) ("Where, as here, the Court has found that Plaintiff's Complaint alleges facts sufficient to defeat qualified immunity, but Plaintiff has not yet had an opportunity to take discovery, it would be premature to grant summary judgment to the defendants." (citing *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) and granting Rule 56(d) motion for discovery)).

The "careful procedure" that the United States Court of Appeals for the Fifth Circuit set forth in *Backe, Wicks, and Lion Boulos* requires the Court first to make an initial determination that Plaintiffs' allegations, if true, would defeat qualified immunity and then to "identify any questions of fact it need[s] to resolve before it [is] able to determine whether the defendants were entitled to qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014); *see also Zanitz v. Seal*, ___ F. App'x ___, 2015 WL 727996, at *7 (5th Cir. Feb. 23, 2015) (per curiam) ("conclud[ing] that the magistrate judge abused his discretion in issuing a discovery order that did not perform either of the steps described in *Zapata*").

## Analysis

As to the first step in *Zapata*, the Court has already found – as excerpted above – that Plaintiffs have alleged sufficient facts in their complaint and Rule 7(a) reply to state a claim for excessive force and have satisfied the heightened pleading standard applied where a qualified immunity defense is raised.

As to the required second step, although any discovery ordered by this Court at this time should "not concern the merits of [Plaintiffs' excessive force] claim," *Lion Boulos*, 834 F.2d at 509, practically speaking, "[i]mmunity-related discovery as to the objective reasonableness of a public official's actions usually encompasses most of the factual disputes in a case. [Indeed, o]ne expects this to be the case, as the defendant's actions must be assessed in light of the circumstances surrounding them." *Watkins*, 2013 WL 3357703, at *1 (citing *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012)).

In *Newman*, for example, the Fifth Circuit first acknowledged that "[c]laims of excessive force are fact-intensive; whether the force used was 'clearly excessive' and 'clearly unreasonable' depends on 'the facts and circumstances of each particular case.'" 706 F.3d at 761 (quoting *Graham*, 490 U.S. at 396); *compare id.*, *with Saucier*, 533 U.S. at 202; *Wood*, 134 S. Ct. at 2067 (defining the "dispositive inquiry" as to qualified immunity to be "whether it would have been clear to a reasonable officer in the [defendant's] position that [his or her] conduct was unlawful in the situation [he or she] confronted") *and al-Kidd*, 131 S. Ct. at 2084; *Plumhoff*, 134 S. Ct. at 2023 (requiring that "clearly established law" for purposes of qualified immunity not be defined "at a high level of generality" because "doing so avoids the crucial question whether the

official acted reasonably in the particular circumstances that he or she faced").

The Fifth Circuit further noted in *Newman*, however, that "'in an obvious case,' the *Graham* excessive-force factors themselves 'can "clearly establish" the answer, even without a body of relevant case law.'" 706 F.3d at 764 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). *Newman* was such an "obvious case":

> None of the *Graham* factors justifie[d the] tasering [of] Newman.... [O]n Newman's account, he committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command. Therefore, taking the facts in the light most favorable to Newman at the summary-judgment stage, [the Fifth Circuit held that] the officers' conduct was objectively unreasonable in light of clearly established law at the time of the incident.

*Id.* (footnote omitted).

As developed to this point, this case is not the "obvious case" – reflected in *Newman* – in which entitlement to qualified immunity can be determined without further development of the facts. For example, here, it is undisputed that Hatcher possessed Officer Bement's taser at the time Officer Bement shot him. In addition to seeking discovery specific to the taser, Plaintiffs' motion for leave requests discovery that appears targeted at determining what Officer Bement knew prior to arriving on the scene and – once on the scene – what he knew prior to shooting Hatcher. *See Webb v. Livingston*, No. 6:13cv711, 2014 WL 1049983, at *8 (E.D. Tex. Mar. 14, 2014) (allowing discovery, pursuant to *Backe*, where "there remain significant questions to be answered as to the details of the Defendants' knowledge, actions, omissions...."; noting that such information was "'particularly important when evaluating the second prong of the qualified immunity test – the reasonableness of [Defendants'] actions in

light of the clearly established constitutional right'" and that "[u]ntil these questions are resolved, the Court is 'unable to rule on the immunity defense without further clarification of the facts'" (respectively quoting *Morgan v. Hubert*, 335 F. App'x 466, 472 (5th Cir. July 1, 2009) (per curiam) (in which the Fifth Circuit vacated an order denying qualified immunity and remanded for discovery limited to that issue); *Backe*, 691 F.3d at 648)).

**Conclusion**

For the reasons explained above, the Court GRANTS IN PART Plaintiff's motion for leave to conduct discovery to uncover facts needed to rule on the qualified immunity defense [Dkt. No. 44]. However, the undersigned believes the next step is for counsel for the parties to confer in person or by telephone no later than **April 13, 2015** to discuss the Plaintiffs' proposed discovery in light of this order. The parties shall then submit a joint status report by **April 17, 2015**. Further orders and whether the Court need conduct a hearing as to the scope of discovery to be permitted at this time will be based on the parties' submission.

SO ORDERED.

DATED: April 3, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE